El Pueblo, Demandante y Apelado, *v.* Vendrell, Demandado y Apelante.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre nulidad de acuerdo de la Comisión del Riego.

No. 2058.—Resuelto en julio 26, 1921.

Riego — Concesión de Agua — Derechos Preferentes — Aguas no Usadas. — Cuando un concesionario de derechos de aguas celebra un contrato con el Pueblo de Puerto Rico por virtud del cual éste último le concede una cantidad de agua que es necesaria, justa y equitativa, estas palabras deberán interpretarse en relación con los términos de su primitiva concesión y no con los derechos de otros concesionarios.

Id. — Id. — No hay duda de que la Ley de Aguas y otras leyes de Puerto Rico limitan a un concesionario de agua la cantidad de ésta a aquélla a que tendría derecho después de tenerse en cuenta los derechos preferentes de otros concesionarios, no siendo necesario considerar si los concesionarios de derechos preferentes ejercitan o no tales derechos. El derecho a las aguas no usadas pertenece al público y no a ningún concesionario en particular.

Los hechos están expresados en la opinión.

Abogados del apelante: Sres. *Parra* y *Pérez Marchand.*

Abogado del apelado: Hon. *Attorney General, J. E. Figueras, Fiscal del Supremo* y Sr. *R. Guillermety.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

El apelante es dueño de una finca compuesta de 963 cuerdas conocida con el nombre de "Obdulia" y radicada en el término municipal de Santa Isabel. En el año 1884 el Gobierno de Puerto Rico, para fines de riego, concedió a esta finca un aprovechamiento de agua de 265 litros por segundo del río de Coamo. Entre las condiciones impuestas por la concesión al dueño de la finca estaba la de que él podría derivar aguas del río de Coamo solamente cuando el caudal del mismo fuera bastante para asegurar la derivación de 324 litros por segundo como derecho preferente para el riego de las haciendas "Florida," "Destino" y "Santa Isabel." En 1908 el demandante Vendrell, con el fin de facilitar la formación de un sistema público de riego en el cual estaría incluída su finca, concedió y traspasó su derecho en la pre-

citada concesión al Pueblo de Puerto Rico y recibió en cambio, según consta, el derecho a la cantidad de agua que fuera necesaria, y que la comisión de riego considerara justa y equitativa. El contrato entre el Pueblo de Puerto Rico y el apelante contiene otras condiciones que no es necesario citar.

Subsiguientemente la Legislatura de Puerto Rico estableció una comisión de riego con facultad para fijar el valor de las concesiones hechas y en el artículo 7 de la ley de agosto 8 de 1913 se prescribía entre otras cosas lo siguiente:

*"Disponiéndose, sin embargo,* que en ningún caso la equivalencia que se hiciera por cualquier derecho o concesión de agua de esa clase, será mayor que la cantidad de agua concedida y beneficialmente usada en virtud del mencionado derecho o concesión de agua tal como se otorgó en su origen o como se interpretare o estuviere limitada legalmente.''

Y prescribía además que la cantidad de agua suficiente para los fines de riego sería de cuatro acres pies por acre.

La Comisión de Riego determinó que la superficie regable de la finca "Obdulia" era de 140 acres, procedió a determinar la cantidad de agua usada en la finca por un período de cinco años desde 1909 a 1913 inclusive, tomó el promedio por un año y consideró ese promedio como la concesión que había de hacerse anualmente por acres pies, pero el apelante sostiene que al hacer sus cálculos la comisión sólo computó los meses de febrero a agosto inclusive, que eran los meses de sequía en el año en aquella determinada zona, prescindiendo de los cinco meses de crecientes. Sobre esta base la comisión valoró la concesión de "Obdulia" en 695.88 acres pies. Ambas partes apelaron a la Corte de Distrito de San Juan, la que hizo un cambio o rebaja a favor del Pueblo de Puerto Rico, y el concesionario Vendrell apeló.

La Corte de Distrito de San Juan, entre otras cosas, expresó que tuviera o no la finca "Obdulia" agua bastante para su cosecho dependía de las lluvias del año; que los 695.88

acres pies concedidos por la comisión se calcularon sin contar el derecho preferente de las otras haciendas ya nombradas; que parte del agua derivada del río por Vendrell en esos cinco años lo fué con derecho y parte no, queriendo decir con esto según aparece del resto de la opinión, que Vendrell tomó una cantidad mayor que aquélla a que hubiera tenido derecho si las debidas deducciones en favor de estas tres haciendas se hubieran hecho, probablemente haciéndolo así en momentos en que las otras haciendas no utilizaban sus derechos; que respetando la condición de su concesión a favor de las tres haciendas la ''Obdulia'' tenía derecho a solamente 578 acres pies; que el area regable de ''Obdulia'' era de 130 cuerdas y la concesión fué hecha por la corte sobre la base de 144 cuerdas. La comisión había declarado primeramente que el área sujeta a riego era de 140 cuerdas.

El apelante alegó tres fundamentos de error, a saber:

''1. Erró la corte al considerar que la Comisión de Riego obró en justicia al conceder a los terrenos regables de la finca 'Obdulia' cuatro pies de agua por acre, siendo así que al ceder su dueño al Pueblo de Puerto Rico la concesión de agua de esa finca, se convino en que a cambio de ella se le daría una cantidad de agua necesaria, justa y equitativa.

''2. Erró la corte al considerar que la Comisión de Riego obró en justicia al valorar la concesión de riego de la 'Obdulia,' tomando en cuenta solamente los aforos hechos en el canal de dicha hacienda durante los meses de febrero a agosto de los años 1909 a 1912 inclusive y pasando por alto los correspondientes a los demás meses de dichos años.

''3. Erró la corte al considerar, que de acuerdo con la Ley de Aguas un segundo o posterior concesionario no tiene derecho a utilizar el agua de las anteriores concesiones para cubrir la suya, cuando los primeros no quieren utilizarla y la dejen abandonada en el cause del río.''

Con respecto al primer señalamiento de error el apelante dice que la comisión estaba obligada a darle una cantidad de agua que se considerara necesaria, justa y equitativa, y

que El Pueblo de Puerto Rico no tenía derecho *ex parte,* a
limitar la cantidad de agua por cuerda a cuatro acres pies;
que el perito del Gobierno prestó declaración tendente a
demostrar que cuatro acres pies no era una cantidad sufi-
ciente para las cosechas de "Obdulia" en los años de sequía.

Toda la cuestión gira sobre lo que ha de considerarse una
"necesaria, justa y equitativa" concesión de agua de acuerdo
con los términos del contrato y las condiciones de la conce-
sión. Ninguna de las partes ha hecho un cálculo que nos
demuestre si la concesión de agua permitida finalmente por
la corte, excedió o era menor que la concedida originalmente
a Pages, causante de Vendrell. Nos parece que 695.88 pies
era más que la cantidad a que hubiera tenido derecho Ven-
drell, haciendo cálculos sobre la base de 865 pies cúbicos por
segundo que fué el volumen de agua que la corte inferior
declaró había sido concedido por la concesión española. El
volumen de agua concedido por la corte era menor que la que
"Obdulia" realmente había tomado en los cinco años, de
donde se infiere que el dueño tiene ahora derecho a tomar
una cantidad de agua que sería menor que la tomada efecti-
vamente por él. La corte, sin embargo, declaró probado que
él había estado tomando más agua que aquélla a que tenía
derecho de acuerdo con su concesión original hecha por el
Gobierno de Puerto Rico. Creemos que las palabras "nece-
saria, justa y equitativa" se refieren a las condiciones de
la concesión así como a las necesidades del apelante en los
años de sequía. Además el contrato dejaba la resolución
de lo que era "necesaria, justa y equitativa" a la Comisión
de Riego y la corte declaró probado que esa comisión había
permitido a Vendrell el promedio anual de toda la cantidad
de agua tomada por él para los cinco años sin tener en cuenta
el derecho de preferencia de las otras tres haciendas. En lo
que respecta a lo que ha de ser la interpretación de las pa-
labras "necesaria, justa y equitativa," el apelante no nos
ha convencido de que la corte no cumpliera con los términos

del contrato. A menos que nuestros cálculos sean equivocados, el apelante está ahora recibiendo algo más que lo que hubiera sido su derecho de acuerdo con los términos de la concesión original hecha por El Pueblo de Puerto Rico aunque él realmente tomó más sin oposición, al parecer, de los dueños de las otras tres haciendas.

El segundo señalamiento de error en cierto modo es una ramificación del otro. El apelante dice que al hacer un cálculo de la cantidad de agua para los meses de febrero a agosto ambos inclusives y prescindiendo de los meses de crecientes la toma de la ''Obdulia'' tendría necesariamente que ser menor. El apelado indica que el único medio de llegar a una certeza en esta cuestión es tomando el período comprendido más o menos por los meses de sequía, porque es la única época en la cual uno podría estar cierto de la cantidad que por término medio pasaría por la toma; que aún cuando el caudal del río era mayor cuando había fuertes lluvias, sin embargo, que el agua casi inmediatamente se la llevaba el caudal y creemos que el apelado quiere decir que la diferencia en la toma no sería una enorme cantidad. Las cartas hidrográficas del agua tomada demuestran que la ''Obdulia'' realmente tomó más durante los cinco meses excluídos. El apelado también alega que considerando un sistema de riego en general durante la época de lluvia, una finca necesitaría menos para fines de riego que en la época de sequía y por tanto los cálculos de riego deben hacerse por el período de los meses de sequía. No dejamos de tener algunas dudas.

Sobre el tercer señalamiento no tenemos ninguna duda. Esto es, que las leyes de agua y las demás leyes de Puerto Rico limitan a un concesionario de agua a la cantidad de agua a que tendría derecho después de considerados los derechos preferentes sin tomar en consideración si los concesionarios de derechos preferentes utilizan o no tales derechos. Lo que quedaba era todo lo que había sido concedido

al causante de Vendrell.   El apelado también señala que el derecho a las aguas no usadas pertenece al público y no a ningún concesionario en particular.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.